## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAVID EVANS III, RASHID MUHAMMAD,
BRENDAN KELLY, MONTA SERVANT,
FELISHA PARNELL, TIMOTHY PARKER,
JOSEPH TINOCO, and FRANK DONIS on
behalf of themselves and all others similarly-situated,

       Plaintiffs,

v.

THOMAS J. DART, Sheriff of Cook County,
and the COUNTY OF COOK, ILLINOIS, a unit of
local government as joint employer for FLSA
purposes and as indemnitor,

       Defendants.

Case No. 20-cv-2453

JURY DEMANDED

## COMPLAINT

DAVID EVANS III, RASHID MUHAMMAD, BRENDAN KELLY, JOSEPH TINOCO,

FRANK DONIS, TIMOTHY PARKER, FELISHA PARNELL, and MONTA SERVANT

(collectively, "Plaintiffs"), allege as follows against THOMAS J. DART and the COUNTY OF

COOK, ILLINOIS (collectively, "Defendants").

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331

because it involves a federal question arising under the Fair Labor Standards Act ("FLSA") and

states claims for failure to pay minimum and overtime compensation due to Cook County

Correctional Officers for integral and indispensable work activities occurring during the COVID-

19 crisis at the Cook County Department of Corrections ("CCDOC").

2. This Court has supplemental jurisdiction over the state law claim alleged herein pursuant

to 28 U.S.C. § 1367(a) and brought under the IWPCA, 820 ILCS 115/1, *et seq.*, because Plaintiff

Muhammad was promised time-and-a-half pay for time spent working at Mental Health

Transition Center ("MHTC") at CCDOC, but has not been paid any such amounts to date nor have any of his fellow Officers who volunteered to work at MHTC.

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this district, a substantial part of the events/omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of this action is located in this district, and because all Defendants are subject to this Court's personal jurisdiction.

## PARTIES

4.   Plaintiff David Evans III is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

5.   Plaintiff Rashid Muhammad is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

6.   Plaintiff Joseph Tinoco is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

7.   Plaintiff Frank Donis is a Cook County Correctional Officer and an adult resident

of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

8. Plaintiff Felisha Parnell is a Cook County Correctional Officer and an adult resident of this judicial district. She is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

9. Plaintiff Monta Servant is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

10. Plaintiff Brendan Kelly is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

11. Plaintiff Timothy Parker is a Cook County Correctional Officer and an adult resident of this judicial district. He is an employee of Defendants within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March

9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

12. Defendant Thomas J. Dart ("Sheriff" or "Dart") is the duly-elected Sheriff of Cook County and is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/2.

13. Defendant Cook County, Illinois ("County") is a unit of local government and a joint employer with Thomas J. Dart for purposes of the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2. It is named in its capacity as joint employer with Defendant Sheriff, and as indemnitor pursuant to at least 745 ILCS §§ 10/1-202 and 9-102. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

14. Cook County, Illinois exercises control over payment of wages to Plaintiffs and similarly-situated officers and, therefore, is named also as a joint employer with Defendant Sheriff for FLSA purposes. *See Freemon v. Foley*, 911 F.Supp.326, 328-29 (N.D. Ill. 1995).

## **FACTS COMMON TO ALL COUNTS**

I.     FACTS RELATING TO ALL PLAINTIFFS AND SIMILARLY-SITUATED
        OFFICERS.

15. This is a collective action brought under the Fair Labor Standards Act by Plaintiffs on behalf of themselves and all others similarly-situated for the recovery of compensation for time spent engaging in washing-up activities after the end of their shifts within the Cook County Department of Corrections ("CCDOC"), including washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining personal protective equipment ("PPE"), and showering.

16. Specifically, the activities for which minimum and overtime compensation are due to Plaintiffs and similarly-situated officers are:

a. Sanitizing and washing their uniforms, gear, belts and equipment, boots and shoes, and bags for necessary items, such as with Lysol, Clorox, or other chemicals and then washing their uniforms after each shift;

b. Sanitizing their vehicles with Lysol, Clorox, or other chemicals either before or after (or both) their shifts to avoid contamination within their vehicles present due to working in CCDOC;

c. Extensively showering and engaging in personal hygiene activity following their shifts; and,

d. Sanitizing and maintaining any PPE in their possession utilized in the course of their duties at CCDOC.

17. The United States Supreme Court, for example, has recognized that time spent changing clothes, showering, and engaging in sanitation activities may be integral and indispensable to principal work activities depending on the circumstances of each case. This judicial district has discussed that case, *Steiner v. Mitchell*, 350 U.S. 247 (1956), as follows:

"[b]ecause the employees in *Steiner* worked with chemicals in the plant, including lead and its compounds, and it was "almost impossible" to keep the concentration of chemicals in the air within "absolutely safe limits," an industrial hygiene program with separate lockers for work and street clothing and free, clean work clothes protected both the company and the employees. *Id.* at 250–51, 256. The Court therefore held that the mandated use of protective clothing was indispensable to the employee's principal activity and therefore concluded that the time the employees spent donning and doffing that clothing was compensable." *Steiner v. Mitchell*, 350 U.S. 247, 250–51, 256 (1956).

*Brooks v. Safety-Kleen Systems, Inc.*, 2012 WL 3598763 (N.D. Ill. 2012) (discussing *Steiner*); *Smith v. Safety-Kleen Systems, Inc.*, 2012 WL 162206 (N.D. Ill. 2012) (denying summary judgment for employer for a claim based on showering and changing clothes); *see also Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 596 (7th Cir. 2012); *Leon v. El-Milagro, Inc.*, 2012 WL 1032890 (N.D. Ill. 2012) (denying summary judgment for employer and stating that the

5

"donning and doffing at issue in *Steiner* 'were indispensable to the health and safety of the employees.'"); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

18. The regulations enacted pursuant to the Portal-to-Portal Act, and discussion thereof, also recognize *Steiner*'s allowance for cleaning up and clothes-changing activities to be compensable in unusual circumstances, which the Plaintiffs all in this case aver are very much present with the COVID-19 situation at CCDOC.[1]

19. All Plaintiffs are sworn Cook County Correctional Officers employed by Thomas J. Dart, Sheriff of Cook County, Illinois, jointly employed by the County of Cook and who receive compensation for their work from Cook County, Illinois at different rates depending upon their years of service, but that are approximately $34.00 - $36.00 per hour.

20. On January 27, 2020, the United States Secretary of Health and Human Services declared COVID-19 a public health emergency.

21. On January 30, 2020, the World Health Organization declared COVID-19 a Public Health Emergency of International Concern.

22. On March 9, 2020, Illinois' Governor J.B. Pritzker declared all counties of the State of Illinois as disaster areas in response to the outbreak of COVID-19.

23. On or about April 8, 2020, the New York Times reported that the Cook County Jail is the

---

[1] *See* 29 C.F.R. 790.7 "***(g)** Other types of activities which may be performed outside the workday and, when performed <u>under the conditions normally present,</u> would be considered "preliminary" or "postliminary" activities, include checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks. *See* Senate Report p. 47. <u>Washing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's "principal activity".</u> *See* colloquy between Senators Cooper and McGrath, 93 Cong. Rec. 2297-2298." (emphases added). *See* https://www.law.cornell.edu/cfr/text/29/790.7 (visited April 21, 2020).

largest known source of corona-virus infections in the United States with, at that time, at least 353 confirmed cases.

24. So too, the Sheriff, through his administration, has sent out emails and memoranda to staff and Plaintiffs referring to the Centers for Disease Control and Prevention's ("CDC") Guidance on COVID-19, with the recommendation that the Guidance be followed by CCDOC staff, including following PPE and hygiene protocols.

25. On or about April 20, 2020, at least one CCDOC Correctional Officer sadly and tragically died from exposure to COVID-19 within the CCDOC, and another Correctional Officer's death is under investigation as to whether or not it is COVID-19 related. *See* https://wgntv.com/news/sheriffs-officer-correctional-officer-both-die-from-covid-19/ (visited April 21, 2020).

26. Prior to and since the foregoing, Plaintiffs and similarly-situated Officers have been required to work their regular shifts within the CCDOC, and, often, they have been mandated to work overtime in conjunction with their regular eight-hour shift.

27. As a result, Plaintiffs and similarly-situated officers are often working up to sixteen (16) hours straight inside the CCDOC.

28. Such shifts include working inside areas of the CCDOC housing isolated, quarantined, and COVID-19 positive detainees, such as the Boot Camp area, known as "MHTC," Division 9, Division 6, and the Residential Treatment Unit ("RTU").

29. Job descriptions, essential functions checklists, and General Orders governing the Correctional Officers provide that such officers are required to monitor activities of inmates to ensure their safety and security, perform security rounds to check on the safety and welfare of

detainees, and to ensure the safe transport of detainees to and from court and locations within

CCDOC.

30. Plaintiffs and similarly-situated officers must, of necessity, come within close proximity

of other officers and detainees as part of performing their essential functions, including those

outlined herein.

31. Regardless of where assigned on the CCDOC compound, Officers have tested positive

for COVID-19, and at a higher rate than the general public in the Cook County, Illinois area.

32. As a result of the foregoing circumstances, Plaintiffs and Cook County Correctional

Officers have been engaging in extensive washing-up, cleaning, and sanitizing activities at the

beginning and ends of their eight- or sixteen-hour shifts, including by washing and sanitizing

their uniforms, sanitizing their cars, sanitizing their persons, sanitizing and maintaining PPE, and

showering.

33. Such activities are performed both in anticipation of beginning a shift in order to

minimize and control contamination of CCDOC from outside the jail, and at the end of their

shifts in order ensure that Plaintiffs and similarly-situated officers minimize bringing COVID-19

home and becoming infected there as a result of exposure inside CCDOC.

34. At all times, such cleaning-up and sanitizing activities have been for the benefit of the

Defendants and constitute integral and indispensable parts of the Sheriff's principal activities, *to

wit*, providing safe and secure housing for detainees by ensuring that Plaintiffs and similarly-

situated officers are minimizing the spread of COVID-19 inside CCDOC.

35. The cleaning and washing-up activity that Plaintiffs and similarly-situated officers are

8

performing are for the direct benefit of the employer and are part of the integral and

indispensable activities of keeping Plaintiffs, similarly-situated officers, and detainees safe and

healthy, and for helping to control the spread within the CCDOC.

36. Defendant Sheriff even provides showers for CCDOC officers; however, due to the risk

of recontamination walking from the showers out of CCDOC, such showers are not utilized on

the compound by the officers for COVID-19 decontamination.

37. Defendant Dart has distributed numerous memoranda and emails emphasizing the need

for maintenance of personal hygiene since on or about March 9, 2020, making same an expected

job function.

38. At no time have the Defendants paid Plaintiffs or similarly-situated officers for the

aforementioned activities, even though Defendants have suffered or permitted such activities to

occur.

39. Plaintiff Brendan Kelly, for example, spends approximately 20 - 30 minutes at the

beginning and end of each shift engaging in the aforementioned sanitizing activities.

40. Plaintiff David Evans III spends approximately 20 - 30 minutes at the beginning and end

of each shift engaging in the aforementioned sanitizing activities.

41. Plaintiff Monta Servant spends approximately 20 - 30 minutes at the beginning and end

of each shift engaging in the aforementioned sanitizing activities.

42. Plaintiff Rashid Muhammad spends approximately 20 - 30 minutes at the beginning and

end of each shift engaging in the aforementioned sanitizing activities.

43. Plaintiff Felisha Parnell spends approximately 20 - 30 minutes at the beginning and end

of each shift engaging in the aforementioned sanitizing activities.

44. Plaintiff Joseph Tinoco spends approximately 20 - 30 minutes at the beginning and end of

each shift engaging in the aforementioned sanitizing activities.

45. Plaintiff Frank Donis spends approximately 20 - 30 minutes at the beginning and end of each shift engaging in the aforementioned sanitizing activities.

46. Plaintiff Timothy Parker spends approximately 20 - 30 minutes at the beginning and end of each shift engaging in the aforementioned sanitizing activities.

47. None of the Plaintiffs spend less than 10 minutes performing such activities on a daily basis, but spend approximately 20-30 minutes before and after their shifts on such activities.

48. Plaintiffs are covered by a collective bargaining agreement; however, the agreement is silent as to pay for the preparatory and concluding work activities named herein, there is not custom or practice as to pay for such activities because the COVID-19 outbreak started in or about January 2020, and the issue of preparatory and concluding work activities as alleged herein has never been a subject of negotiations between CCSO and the union to any of the Plaintiffs' knowledge.

49. Plaintiff David Evans III was elected by the Teamsters Local 700 membership to serve as their Chief Union Steward in January 2020; however, Teamsters Local 700's Business Agent Anthony McGee has excluded him from negotiations over CBA issues for reasons unknown to Plaintiff, as evidenced in the following excerpt from an email between CCDOC Director Michael Miller and Teamsters Local 700 Business Agent Anthony McGee:

> "***Based on previous discussions with you, my understanding is that CO Evans does not have the authority of the Union to discuss CBA issues with management and all such discussions should flow through you as business agent. I assume this is still true. Even if he was so authorized, my schedule and demands this morning did not allow it. However, if there are issues regarding the CO's CBA that require discussion, you know I am always willing to discuss them with you or whoever you appoint and the Union requires. I appreciate our ability to communicate and be open about issues. Please let me know if there are CBA issues we need to discuss based on CO Evans statements.

Regards,
Michael Miller- First Assistant Executive Director of Operations
Cook County Sheriff's Department - D.O.C."

50. So too, according to FOIA requests Teamsters Local 700 representative Anthony McGee

has only exchanged approximately 18 emails with Michael Miller since on or about February 25,

2020, none of which involve issues such as those raised in this Complaint and demonstrating that

issues such as those raised herein are not being bargained.

II.      FACTS RELATING TO MHTC ASSIGNMENTS.

51. Plaintiff Rashid Muhammad received an email on March 27, 2020 offering time-and-a-

half-pay for officers who volunteer to work at the MHTC while COVID-19 positive detainees

are housed there:

---

**From:** Rashid Muhammad (Sheriff) <Rashid.Muhammad@cookcoun tyi l.gov>
**Sent:** Friday, March 27, 2020 11:44:26 PM
**To:** Martha Yoksoulian (Sheriff) <Mart ha.Yoksoulian@ cookcount yil.gov>
**Subject:** Re: Mental Health Transiti on Center Assignments Available

Hello Supt. I am interested in volunteering for the 11-7 shift if and only if the time and a half is for pay. I'm not interested in putting myself in potential harms way for time on the books.

Dep. R. Muhammad #17016

---

**From:** Martha Yoksoulian (Sheriff) <Mart ha.Yoksoulian@cookcountyi l.gov>
**Sent:** Friday, March 27, 2020 12:46 PM
**To:** Division 10 Supervisors <divison10supervi sors@ cookcounty.onmicrosoft.co m>; Division Ten Officers <divisi ontenofficers@cook county .onmicrosoft. com>
**Subject:** Mental Health Transiti on

Center Assignments Available Hello all,

As some of you may have heard on the news, the sheriff is opening some of the barrack's at the Mental Health Transition Center for the inmates that have tested
positive for the COVID-19 virus.
We are asking if anyone wants to volunteer working at MHTC for a while until we pass this crisis. It will be all three shifts 11-7, 7-3 and 3-11. 11-7 will be placed in details 1 and 7. 7-3 will be placed in details 2 and 7 as well as 3-11 details 2 and 7. You will receive time and a half pay however, it has not been decided if it will be in time or pay. As always you will have protective gear to protect to work with and you will be stationed a minimum of ten feet away from the inmates. We need both officers and supervisors. We are looking from 3-5 officers per division. If you are intere sted , please reply to this email.

Thank you,

**Superintende
nt Martha
Yoksoulian
Cook County
Sheriff's
Office Division
10
2700 S California Avenue
Chicago,** II **60608**

11

**Office (773) 674-4429 Mobile (312) 758-5029**
**Email:** Martha .Yoksoulian@cookcountyil.gov

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you

52. As noted above, Muhammad replied to the email that he would volunteer for the MHTC

if he received pay.

53. The CCSO accepted Muhammad's offer and transferred him to MHTC starting March

30, 2020, in the following memorandum:

## *COOK COUNTY DEPARTMENT OF CORRECTIONS*
## PERSONNEL MEMORANDUM

| DISTRIBUTION A | EFFECTIVE DATE: 03/30/20 | PERSONNEL MEMORANDUM # 20-161 |
|---|---|---|

**Effective Monday, March 30, 2020, the following staff members will be detailed as indicated below:**

### FROM DIVISION IX 11-7 SHIFT DETAIL 2 TO MHTC 11-7 SHIFT DETAIL 2

**Ofc. Timothy Baker JDE#770047 Review Date: 04/24/20**

### FROM DIVISION X 11-7 SHIFT DETAIL 6 TO MHTC 11-7 SHIFT DETAIL 7

**Ofc. Rashid Muhammad JDE#840272 Review Date: 04/24/20**

Cc:  Esequiel Iracheta, Superintendent Division IX/SMT Martha
      Yoksoulian, Superintendent Division X
      Jason Cianciarulo, Superintendent EXOP/Transportation Matthew
      Burke, Executive Director, Human Resources
      Ngozi Okorafor, Director of Employment Actions, Human Resources Elizabeth
      Oplawksi, Employment Action Compliance Officer, CCSO Ofc. E. Kern, Assistant Chief
      Union Steward (Teamsters)
      File

54. Numerous other officers also accepted the offer and transferred to MHTC.

55. As of April 17, 2020, Muhammad, and on information, no officers who volunteered to

work at MHTC were paid any time-and-a-half pay, either in comp or in pay, but were instead

paid their regular paycheck.

56. Defendants failed to pay amounts promised to those Officers who volunteered to work in

particularly dangerous conditions at MHTC, including Plaintiff Muhammad.

**COUNT 1: FLSA MINIMUM WAGE VIOLATIONS PURSUANT TO 29 U.S.C. § 206**
**(All Plaintiffs individually and on behalf of the FLSA collective v. All Defendants)**

57. Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint in this Count.

58. The FLSA, 29 U.S.C. § 206, requires that an employer compensate an employee a minimum hourly rate for all hours suffered or permitted to work.

59. Defendants suffered or permitted Plaintiffs and similarly-situated officers to work at the beginning of, and after, their shifts, in sanitizing activities, including by washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining PPE, and showering.

60. Each Plaintiff, and all similarly-situated officers, are due to be paid wages for approximately 20 - 30 minutes of sanitation activities at the beginning of, and the end of, each shift worked between March 9, 2020 and through the cessation of the COVID-19 protocols at CCDOC.

61. By the aforementioned activities, all Plaintiffs are owed their straight-time rates of pay, in accordance with their years of service, for the sanitation activities averred herein that are performed at the beginning of and after their shifts.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Honorable Court enter judgment in their favor, and against Defendants, and order that Defendants pay them unpaid back wages between March 9, 2020 and the date of cessation of COVID-19-related protocols at CCDOC, damages and liquidated damages in the amount equal to actual damages, interest and pre-judgment interest on such wages, reasonable attorneys' fees, the certification of a collective action for FLSA purposes, and for such other relief as this Court deems just and proper.

## COUNT 2: FLSA OVERTIME VIOLATIONS PURSUANT TO 29 U.S.C. § 207
### (All Plaintiffs individually and on behalf of the FLSA collective v. All Defendants)

62. Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint in this Count.

63. The FLSA, 29 U.S.C. § 207, requires that an employer compensate an employee one-and-one-half-times the regular rate of pay for all hours worked over forty (40) hours in a given workweek.

64. Defendants suffered or permitted Plaintiffs and similarly-situated officers to work at the beginning of, and after, their shifts, in sanitizing activities, including by washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining PPE, and showering without paying them for such activities that were performed at an overtime rate of pay where the Plaintiffs had performed over forty (40) hours of work in the workweek.

65. Each Plaintiff, and all similarly-situated officers, are due to be paid wages for approximately 30 minutes of sanitation activities at the beginning of, and the end of, each shift worked between March 9, 2020 and through the cessation of the COVID-19 protocols at CCDOC.

66. By the aforementioned activities, all Plaintiffs are owed their overtime rates of pay, in accordance with their years of service, for the sanitation activities averred herein that are performed at the beginning of and after their shifts and that were performed when the Plaintiffs had already worked over forty (40) hours in the workweek.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Honorable Court enter judgment in their favor, and against Defendants, and order that Defendants pay them unpaid back overtime wages between March 9, 2020 and the date of cessation of COVID-19-related protocols at CCDOC, damages and liquidated damages in the amount equal to actual

14

damages, interest and pre-judgment interest on such wages, reasonable attorneys' fees, the

certification of a collective action for FLSA purposes, and for such other relief as this Court

deems just and proper.

## COUNT 3: IWPCA VIOLATIONS
**(Plaintiff Muhammad on behalf of himself and similarly-situated officers v. All Defendants)**

67. Plaintiff Muhammad restates and incorporates by reference all other paragraphs of this

Complaint in this Count.

68. Plaintiff Muhammad and similarly-situated officers entered into an agreement with

Defendant Sheriff to voluntarily work at the MHTC for time-and-a-half pay (in Muhammand's

case), or time-and-a-half pay or comp time (in others').

69. Via email on March 27, 2020, Plaintiff Muhammad notified the Sheriff, through his

Superintendent, that he would work at the MHTC if he received pay for doing so.

70. On March 30, 2020, Defendant Sheriff transferred Plaintiff Muhammad to MHTC, where

he then worked, including by providing safety and security, and welfare, functions for COVID-

19 positive detainees at great risk of exposure to himself.

71. As of payday on April 17, 2020, Defendant Sheriff failed to pay Plaintiff Muhammad, or

any similarly-situated officer assigned to MHTC, the time-and-a-half pay owed under the

transfer agreement.

72. Plaintiff Muhammad and similarly-situated officers are entitled to recover all amounts

owed under the transfer agreement for time spent assigned at MHTC, two percent of the amount

of such underpayments for each month they remain unpaid, costs, and reasonable attorneys' fees.

WHEREFORE, for the foregoing reasons, Plaintiff Muhammad requests that this

Honorable Court enter judgment in his favor, and against Defendants, and order that Defendants

pay him and all similarly-situated officers for all underpaid overtime wages between March 30,

2020 and the date of cessation of his assignment at MHTC, two percent of the amount of such underpayments for each month they remain unpaid, costs and reasonable attorneys' fees, the certification of a class for purposes of this IWPCA claim, and for such other relief as this Court deems just and proper.

## CONCLUSION

Based on the foregoing, Plaintiffs pray that this Honorable Court grant the relief sought in all Counts in this Complaint, certify a collective action for FLSA purposes for whom named Plaintiffs will serve as collective action representatives, certify a class for IWPCA purposes for which Plaintiff Muhammad will serve as class action representative, and award individual and class-wide relief as sought herein.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL COUNTS**

Respectfully submitted,

*/s/ Cass T. Casper*
*/s/ Christopher Cooper*
*/s/ Gianna Scatchell*
*/s/ Jack Lanahan*

By:_____
*Plaintiffs' Attorneys*

*Cass T. Casper, Esq.*
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 351-2478
E: ctc@talonlaw.com

*Gianna R. Scatchell, Esq.*
LAW OFFICES OF GIANNA SCATCHELL
360 W. Hubbard Street, 1404
Chicago, Illinois 60654
P: (312) 248-3303
E: gia@lawfirm.gs

*Christopher Cooper, Esq.*

Law Office of Christopher Cooper, Inc.
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 473-2968
E: cooperlaw3234@gmail.com

*John Lanahan, Esq.*
188 West Randolph Street
Chicago, Illinois 60601
P: (312) 404-2416
E: lanahan.john@gmail.com