## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAVID EVANS III, RASHID MUHAMMAD,
MONTA SERVANT, FELISHA PARNELL,
DWIGHT ANDERSON, JOSEPH TINOCO, and
FRANK DONIS on behalf of themselves and all others
similarly-situated,

    Plaintiffs,

v.

THOMAS J. DART, Sheriff of Cook County,
and the COUNTY OF COOK, ILLINOIS, a unit of
local government as joint employer for FLSA
purposes and as indemnitor, RAMON D. WILLIAMS
(Individual Capacity), and ANTHONY MCGEE
(Individual Capacity),

    Defendants.

Case No. 20-cv-2453

The Honorable Judge
Rebecca Pallmeyer

Magistrate Judge Kim

JURY DEMANDED

## SECOND AMENDED COMPLAINT

   DAVID EVANS III, RASHID MUHAMMAD, JOSEPH TINOCO, FRANK DONIS, FELISHA PARNELL, DWIGHT ANDERSON, and MONTA SERVANT (collectively, "Plaintiffs"), allege as follows against THOMAS J. DART, the COUNTY OF COOK, ILLINOIS, RAMON D. WILLIAMS, and ANTHONY MCGEE (collectively, "Defendants").

## JURISDICTION AND VENUE

   1.  This Court has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because it involves a federal question arising under the Fair Labor Standards Act ("FLSA") and states claims for failure to pay minimum and overtime compensation due to Cook County Correctional Officers for integral and indispensable work activities occurring during the COVID-19 crisis at the Cook County Department of Corrections ("CCDOC").

2.      This Court also has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because it involves a federal question arising under the FLSA's retaliation provision as to the conduct of Ramon D. Williams and Anthony McGee occurring following the filing of this suit.

3.      This Court has supplemental jurisdiction over the state law claim alleged herein pursuant to 28 U.S.C. § 1367(a) and brought under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, because Plaintiff Muhammad was promised time-and-a-half pay for time spent working at Mental Health Transition Center ("MHTC") at CCDOC, but has not been paid any such amounts to date nor have any of his fellow Officers who volunteered to work at MHTC.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this district, a substantial part of the events/omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of this action is located in this district, and because all Defendants are subject to this Court's personal jurisdiction.

## PARTIES

5.      Plaintiff David Evans III is a Cook County Correctional Officer ("CO") and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

6.      Plaintiff Rashid Muhammad is a CO and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March

9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

7.      Plaintiff Joseph Tinoco is a CO and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

8.      Plaintiff Frank Donis is a CO and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

9.      Plaintiff Felisha Parnell is a CO and an adult resident of this judicial district. She is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

10.      Plaintiff Monta Servant is a CO and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

11. Plaintiff Dwight Anderson is a CO and an adult resident of this judicial district. He is an employee of Defendants Sheriff and Cook County within the meaning of the FLSA. Plaintiff has worked and is owed unpaid compensation for at least one workweek between March 9, 2020 and the date of filing this suit, including unpaid wages for sanitation activities at the beginning and end of each shift worked during such time period.

12. All Plaintiffs have executed FLSA opt-in forms and they accompany this Second Amended Complaint as a Supplement.

## Sheriff and County Defendants

13. Defendant Thomas J. Dart ("Sheriff" or "Dart") is the duly-elected Sheriff of Cook County and is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2.

14. Defendant Cook County, Illinois ("County") is a unit of local government and a joint employer with Thomas J. Dart for purposes of the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2. It is named in its capacity as joint employer with Defendant Sheriff, and as indemnitor pursuant to at least 745 ILCS §§ 10/1-202 and 9-102. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

15. Cook County, Illinois exercises control over payment of wages to Plaintiffs and other similarly-situated CO's and, therefore, is named also as a joint employer with Defendant Sheriff for FLSA purposes. *See Freemon v. Foley*, 911 F.Supp.326, 328-29 (N.D. Ill. 1995).

## Union Defendants

16. Defendant Ramon D. Williams ("Williams" or "Union Defendant"), is a legal adult residing in this judicial district and is the President and Chief Executive Officer of Teamsters Local 700, the union representing Cook County Correctional Officers, including Plaintiffs. He is sued in

4

his individual capacity because he engaged in retaliatory acts against Plaintiffs for bringing this lawsuit, acts that are outside the scope of his duties as President and Chief Executive Office of Teamsters Local 700.

17.     Defendant Anthony McGee ("McGee" or "Union Defendant"), is a legal adult residing in this judicial district and is the Vice President of Teamsters Local 700. He is sued in his individual capacity because he engaged in retaliatory acts against Plaintiffs for bringing this lawsuit, acts that are outside the scope of his duties as Vice-President of Teamsters Local 700.

18.     Williams and McGee took office as President and Vice President of Local 700 in January 2020 via the election of the "Reform Slate" that ran against the prior incumbent Local's Executive Board for the Union Officer Election in November 2019.

19.     Williams and McGee were originally candidates for office on the incumbent slate, but in or about September 2019 abandoned the incumbent slate, orchestrated a takeover of the President and Vice President positions on the Reform Slate, winning and taking office as President and Vice President in January 2020.

## **FACTS COMMON TO ALL COUNTS**

I.      <u>FACTS RELATING TO ALL PLAINTIFFS AND SIMILARLY SITUATED OFFICERS.</u>

20.     This is a collective action brought under the Fair Labor Standards Act by Plaintiffs on behalf of themselves and all others similarly-situated for the recovery of compensation for time spent engaging in decontamination/sanitation activities after the end of their shifts within the Cook County Department of Corrections ("CCDOC"), including washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining personal protective equipment ("PPE"), and showering.

21.     Specifically, the activities for which minimum and overtime compensation are due to Plaintiffs and similarly situated officers are:

    a.    Sanitizing and washing their uniforms, gear, belts and equipment, boots and shoes, and bags for necessary items, such as with Lysol, Clorox, or other chemicals and then washing their uniforms after each shift;

    b.    Sanitizing their vehicles with Lysol, Clorox, or other chemicals either before or after (or both) their shifts to avoid contamination within their vehicles present due to working in CCDOC;

    c.    Extensively showering and engaging in personal hygiene activity following their shifts; and,

    d.    Sanitizing and maintaining any PPE in their possession utilized in the course of their duties at CCDOC.

22.     The United States Supreme Court has recognized that time spent changing clothes, showering, and engaging in sanitation activities may be integral and indispensable to principal work activities depending on the circumstances of each case. This judicial district has discussed that case, *Steiner v. Mitchell*, 350 U.S. 247 (1956), as follows:

> [b]ecause the employees in *Steiner* worked with chemicals in the plant, including lead and its compounds, and it was "almost impossible" to keep the concentration of chemicals in the air within "absolutely safe limits," an industrial hygiene program with separate lockers for work and street clothing and free, clean work clothes protected both the company and the employees. *Id.* at 250–51, 256.The Court therefore held that the mandated use of protective clothing was indispensable to the employee's principal activity and therefore concluded that the time the employees spent donning and doffing that clothing was compensable. *Steiner v. Mitchell*, 350 U.S. 247, 250–51, 256 (1956).

*See Brooks v. Safety-Kleen Systems, Inc.*, 2012 WL 3598763 (N.D. Ill. 2012) (discussing *Steiner*); *Smith v. Safety-Kleen Systems, Inc.*, 2012 WL 162206 (N.D. Ill. 2012) (denying summary judgment for employer for a claim based on showering and changing clothes); *see also Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 596 (7th Cir. 2012); *Leon v. El-Milagro, Inc.*, 2012 WL 1032890 (N.D. Ill. 2012) (denying summary judgment for employer and stating that the "donning and

doffing at issue in *Steiner* 'were indispensable to the health and safety of the employees.'");
*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

23.     The regulations enacted pursuant to the Portal-to-Portal Act, and discussion thereof, also recognize *Steiner*'s allowance for cleaning up and clothes-changing activities to be compensable in unusual circumstances, which the Plaintiffs all in this case aver are very much present with the COVID-19 situation at CCDOC.[1]

24.     All Plaintiffs are sworn Cook County Correctional Officers employed by Thomas J. Dart, Sheriff of Cook County, Illinois, jointly employed by the County of Cook and who receive compensation for their work from Cook County, Illinois at different rates depending upon their years of service, but that are approximately $34.00 - $36.00 per hour.

25.     On January 27, 2020, the United States Secretary of Health and Human Services declared COVID-19 a public health emergency.

26.     On January 30, 2020, the World Health Organization declared COVID-19 a Public Health Emergency of International Concern.

27.     On March 9, 2020, Illinois' Governor J.B. Pritzker declared all counties of the State of Illinois as disaster areas in response to the outbreak of COVID-19.

---

[1] *See* 29 C.F.R. 790.7 "***(g)** Other types of activities which may be performed outside the workday and, when performed <u>under the conditions normally present,</u> would be considered "preliminary" or "postliminary" activities, include checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks. *See* Senate Report p. 47. <u>Washing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's "principal activity".</u> *See* colloquy between Senators Cooper and McGrath, 93 Cong. Rec. 2297-2298." (emphasis added). *See* https://www.law.cornell.edu/cfr/text/29/790.7 (visited April 21, 2020).

28. On or about April 8, 2020, *The New York Times* reported that the Cook County Jail is the largest known source of corona-virus infections in the United States with, at that time, at least 353 confirmed cases.

29. So too, the Sheriff, through his administration, has sent out emails and memoranda to staff and Plaintiffs referring to the Centers for Disease Control and Prevention's ("CDC") Guidance on COVID-19, with the recommendation that the Guidance be followed by CCDOC staff, including following PPE and hygiene protocols.

30. On or about April 20, 2020, at least one CCDOC Correctional Officer sadly and tragically died from exposure to COVID-19 within the CCDOC, and another Correctional Officer's death is under investigation as to whether or not it is COVID-19 related. *See* https://wgntv.com/news/sheriffs-officer-correctional-officer-both-die-from-covid-19/ (visited April 21, 2020).

31. On or about May 10, 2020, another Cook County Correctional Officer sadly and tragically died from COVID-19 exposure within the CCDOC. *See* https://chicago.suntimes.com/coronavirus/2020/5/11/21254301/antoine-jones-coronavirus-cook-county-jail-correctional-officer-dies-covid-19 (visited May 14, 2020).

32. Prior to and since the foregoing, Plaintiffs and similarly-situated Officers have been required to work their regular shifts within the CCDOC, and, often, they have been mandated to work overtime in conjunction with their regular eight-hour shift.

33. As a result, Plaintiffs and similarly-situated officers are often working up to sixteen (16) hours straight inside the CCDOC.

34. Such shifts include working inside areas of the CCDOC housing or overseeing isolated, quarantined, and COVID-19 positive detainees, such as the Boot Camp area, known as

"MHTC," Division 9, Division 6, outlying hospitals, transportation, external operations, the Residential Treatment Unit ("RTU").

35.     Job descriptions, essential functions checklists, and General Orders governing the Correctional Officers provide that such officers are required to monitor activities of inmates to ensure their safety and security, perform security rounds to check on the safety and welfare of detainees, and to ensure the safe transport of detainees to and from court and locations within CCDOC.

36.     Plaintiffs and similarly-situated officers must, of necessity, come within close proximity of other officers and detainees as part of performing their essential functions, including those outlined herein.

37.     Regardless of where assigned on the CCDOC compound, Officers have tested positive for COVID-19, and at a higher rate than the general public in the Cook County, Illinois area.

38.     As a result of the foregoing circumstances, Plaintiffs and Cook County Correctional Officers have been engaging in extensive decontamination, cleaning, and sanitizing activities at the beginning and ends of their eight- or sixteen-hour shifts, including washing and sanitizing their uniforms, tools, and equipment, sanitizing their cars, sanitizing their persons, sanitizing and maintaining PPE, and showering.

39.     Such activities are performed both in anticipation of beginning a shift in order to minimize and control contamination of CCDOC from outside the jail, and at the end of their shifts in order ensure that Plaintiffs and similarly-situated officers minimize bringing COVID-19 home and prevent their families from becoming infected as a result of exposure inside CCDOC.

40.     At all times, such cleaning-up and sanitizing activities have been for the benefit of the Defendants and constitute integral and indispensable parts of the Sheriff's principal activities, *to wit*, providing safe and secure housing, transporting, overseeing, and monitoring for detainees by ensuring that Plaintiffs and similarly-situated officers are minimizing the spread of COVID-19 inside CCDOC.

41.     The cleaning and washing-up activity that Plaintiffs and similarly-situated officers are performing are for the direct benefit of the employer and are part of the integral and indispensable activities of keeping Plaintiffs, similarly-situated officers, and detainees safe and healthy, and for helping to control the spread within the CCDOC.

42.     Defendant Sheriff even provides showers for CCDOC officers inside, for example, locker rooms; however, due to the risk of recontamination walking from the showers out of CCDOC, such showers are not being utilized on the compound by the officers for COVID-19 decontamination.

43.     Defendant Dart has distributed numerous memoranda and emails emphasizing the need for maintenance of personal hygiene since on or about March 9, 2020, making same an expected job function.

44.     At no time have the Defendants paid Plaintiffs or similarly situated officers for the aforementioned activities, even though Defendants have suffered or permitted such activities to occur.

45.     Plaintiff David Evans III spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

46.     Plaintiff Monta Servant spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

10

47.     Plaintiff Rashid Muhammad spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

48.     Plaintiff Felisha Parnell spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

49.     Plaintiff Joseph Tinoco spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

50.     Plaintiff Frank Donis spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

51.     Plaintiff Dwight Anderson spends approximately 20 to 30 minutes at the beginning and/or end of each shift engaging in the aforementioned decontamination and sanitizing activities.

52.     None of the Plaintiffs spend less than 10 minutes performing such activities on a daily basis, but spend approximately 20 to 30 minutes before and after their shifts on such activities.

53.     Plaintiffs are covered by a collective bargaining agreement; however, the agreement is silent as to pay for the preparatory and concluding work activities named herein.

54.     There is no custom or practice as to pay for such activities because the COVID-19 outbreak started in or about January 2020, and the issue of preparatory and concluding work activities as alleged herein has never been a subject of negotiations between CCSO and the union to any of the Plaintiffs' knowledge.

55.     Plaintiff David Evans III was elected by the Teamsters Local 700 membership to serve as their Chief Union Steward in January 2020; however, Teamsters Local 700's Business Agent Anthony McGee has excluded him from any discussions over CBA issues, as evidenced in

11

the following excerpt from an email between CCDOC Director Michael Miller and Teamsters Local 700 Business Agent Anthony McGee:

> "***Based on previous discussions with you, my understanding is that CO Evans does not have the authority of the Union to discuss CBA issues with management and all such discussions should flow through you as business agent. I assume this is still true. Even if he was so authorized, my schedule and demands this morning did not allow it. However, if there are issues regarding the CO's CBA that require discussion, you know I am always willing to discuss them with you or whoever you appoint and the Union requires. I appreciate our ability to communicate and be open about issues. Please let me know if there are CBA issues we need to discuss based on CO Evans statements.
>
> Regards,
> Michael Miller- First Assistant Executive Director of Operations
> Cook County Sheriff's Department - D.O.C."

56.     So too, according to FOIA requests, Teamsters Local 700 representative Anthony McGee has only exchanged approximately 18 emails with Michael Miller since on or about February 25, 2020 and March 30, 2020, none of which involved issues such as those raised in this SAC and demonstrating that issues such as those raised herein are not being addressed by the Union.

## II.     FACTS RELATING TO MHTC ASSIGNMENTS.

57.     Plaintiff Rashid Muhammad received and replied to an email on March 27, 2020 offering time-and-a-half-pay for officers who volunteer to work at the MHTC while COVID-19 positive detainees are housed there, to wit:

---

**From:** Rashid Muhammad (Sheriff) <Rashid.Muhammad@cookcountyil.gov>
**Sent:** Friday, March 27, 2020 11:44:26 PM
**To:** Martha Yoksoulian (Sheriff) <Martha.Yoksoulian@cookcountyil.gov>
**Subject:** Re: Mental Health Transition Center Assignments Available

Hello Supt. I am interested in volunteering for the 11-7 shift if and only if the time and a half is for pay. I'm not interested in putting myself in potential harms way for time on the books.

Dep. R. Muhammad #17016

---

**From:** Martha Yoksoulian (Sheriff) <Martha.Yoksoulian@cookcountyil.gov>
**Sent:** Friday, March 27, 2020 12:46 PM
**To:** Division 10 Supervisors <divison10supervi sors@ cookcounty.onmicrosoft.co m>; Division
Ten Officers <divisiontenofficers@cookcountyil.gov>
**Subject:** Mental Health Transition Center Assignments Available

Hello all,
As some of you may have heard on the news, the sheriff is opening some of the barrack's at the
Mental Health Transition Center for the inmates that have tested positive for the COVID-19 virus.

We are asking if anyone wants to volunteer working at MHTC for a while until we pass this crisis.
It will be all three shifts 11-7, 7-3 and 3-11. 11-7 will be placed in details 1 and 7. 7-3 will be
placed in details 2 and 7 as well as 3-11 details 2 and 7. You will receive time and a half pay
however, it has not been decided if it will be in time or pay. As always you will have protective
gear to protect to work with and you will be stationed a minimum of ten feet away from the
inmates. We need both officers and supervisors. We are looking from 3-5 officers per division. If
you are interested , please reply to this email.

Thank you,

**Superintendent Martha Yoksoulian**
**Cook County Sheriff's Office Division 10**
**2700 S California Avenue**
**Chicago, IL 60608**
**Office (773) 674-4429 Mobile (312) 758-5029**
**Email:** Martha.Yoksoulian@cookcountyil.gov

The contents of this e-mail message and any attachments are intended solely for the addressee(s)
named in this message. This communication is intended to be and to remain confidential and may
be subject to applicable work product privileges. If you are not the intended recipient of this
message or if this message has been addressed to you in error, please alert the sender immediately
by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy
this message and/or any attachments and if you are not the intended recipient, do not disclose the
contents or take any action in reliance upon the information contained in this communication or
any attachments. Thank you

58.     As noted above, Muhammad replied to the email that he would volunteer for the

MHTC if he received pay.

59.     The CCSO accepted Muhammad's offer and transferred him to MHTC starting

March 30, 2020. Numerous other officers also accepted the offer and transferred to MHTC.

60.     As of April 17, 2020, Muhammad, and on information, no officers who volunteered to work at MHTC were paid any time-and-a-half pay, either in compensatory time or in pay, but were instead paid their regular paycheck.

61.     Defendants failed to pay amounts promised to those Officers who volunteered to work in particularly dangerous conditions at MHTC, including Plaintiff Muhammad.

## COUNT 1: FLSA MINIMUM WAGE VIOLATIONS PURSUANT TO 29 U.S.C. § 206
### (All Plaintiffs individually and on behalf of the FLSA collective v. Dart and County)

62.     Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint in this Count.

63.     The FLSA, 29 U.S.C. § 206, requires that an employer compensate an employee a minimum hourly rate for all hours suffered or permitted to work.

64.     Defendants suffered or permitted Plaintiffs and similarly-situated officers to work at the beginning of, and after, their shifts, in decontamination and sanitizing activities, including by washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining PPE, and showering.

65.     Each Plaintiff, and all similarly-situated officers, are due to be paid wages for approximately 20 to 30 minutes of decontamination and sanitation activities at the beginning of, and the end of, each shift worked between March 9, 2020 and through the cessation of the COVID-19 protocols at CCDOC.

66.     By the aforementioned activities, all Plaintiffs are owed their straight-time rates of pay, in accordance with their years of service, for the decontamination and sanitation activities averred herein that are performed at the beginning of and after their shifts.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Honorable Court enter judgment in their favor, and against Defendants Dart and Cook County, and order that Defendants

pay them unpaid back wages between March 9, 2020 and the date of cessation of COVID-19-related protocols at CCDOC, damages and liquidated damages in the amount equal to actual damages, interest and pre-judgment interest on such wages, reasonable attorneys' fees, the certification of a collective action for FLSA purposes, and for such other relief as this Court deems just and proper.

## COUNT 2: FLSA OVERTIME VIOLATIONS PURSUANT TO 29 U.S.C. § 207
### (All Plaintiffs individually and on behalf of the FLSA collective v. Dart and County)

67.     Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint in this Count.

68.     The FLSA, 29 U.S.C. § 207, requires that an employer compensate an employee one-and-one-half-times the regular rate of pay for all hours worked over forty (40) hours in a given workweek.

69.     Defendants suffered or permitted Plaintiffs and similarly-situated officers to work at the beginning of, and after, their shifts, in decontamination and sanitizing activities, including by washing and sanitizing their uniforms, sanitizing their persons, sanitizing and maintaining PPE, and showering without paying them for such activities that were performed at an overtime rate of pay where the Plaintiffs had performed over forty (40) hours of work in the workweek.

70.     Each Plaintiff, and all similarly-situated officers, are due to be paid wages for approximately 20 to 30 minutes of decontamination and sanitation activities at the beginning of, and the end of, each shift worked between March 9, 2020 and through the cessation of the COVID-19 protocols at CCDOC.

71.     By the aforementioned activities, all Plaintiffs are owed their overtime rates of pay, in accordance with their years of service, for the decontamination and sanitation activities averred

herein that are performed at the beginning of and after their shifts and that were performed when the Plaintiffs had already worked over forty (40) hours in the workweek.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Honorable Court enter judgment in their favor, and against Defendants Dart and Cook County, and order that Defendants pay them unpaid back overtime wages between March 9, 2020 and the date of cessation of COVID-19-related protocols at CCDOC, damages and liquidated damages in the amount equal to actual damages, interest and pre-judgment interest on such wages, reasonable attorneys' fees, the certification of a collective action for FLSA purposes, and for such other relief as this Court deems just and proper.

### COUNT 3: IWPCA VIOLATIONS
**(Plaintiff Muhammad on behalf of himself and similarly situated officers v. Dart and County)**

72.     Plaintiff Muhammad restates and incorporates by reference all other paragraphs of this Complaint in this Count.

73.     Plaintiff Muhammad and similarly-situated officers entered into an agreement with Defendant Sheriff to voluntarily work at the MHTC for time-and-a-half pay (in Muhammad's case), or time-and-a-half pay or compensation time (in others' cases).

74.     Via email on March 27, 2020, Plaintiff Muhammad notified the Sheriff, through his Superintendent, that he would work at the MHTC only if he received pay for doing so.

75.     On March 30, 2020, Defendant Sheriff transferred Plaintiff Muhammad to MHTC, where he then worked, including by providing safety and security, and welfare, functions for COVID-19 positive detainees at great risk of exposure to himself.

76.   As of payday on April 17, 2020, Defendant Sheriff failed to pay Plaintiff Muhammad, or any similarly situated officer assigned to MHTC, the time-and-a-half pay owed under the transfer agreement.

77.   Plaintiff Muhammad and similarly situated officers are entitled to recover all amounts owed under the transfer agreement for time spent assigned at MHTC, two percent of the amount of such underpayments for each month they remain unpaid, costs, and reasonable attorneys' fees.

WHEREFORE, for the foregoing reasons, Plaintiff Muhammad requests that this Honorable Court enter judgment in his favor, and against Defendants Dart and Cook County, and order that Defendants pay him and all similarly-situated officers for all underpaid overtime wages between March 30, 2020 and the date of cessation of his assignment at MHTC, two percent of the amount of such underpayments for each month they remain unpaid, costs and reasonable attorneys' fees, the certification of a class for purposes of this IWPCA claim, and for such other relief as this Court deems just and proper.

## COUNT 4: RETALIATION UNDER THE FLSA
### (All Plaintiffs v. Defendants Ramon D. Williams and Anthony McGee)

78.   Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint in this Count.

79.   Section 215(a)(3) of the FLSA prohibits *any person* from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act. . ." 29 U.S.C. § 215(a)(3).

80.   "Any person" is defined broadly by the FLSA, to include third parties, such as Teamsters Local 700, its President, Ramon D. Williams, its Vice President, Anthony McGee, and

any staff or attorneys who wrote the letter above on his behalf. Indeed, at least one Court of Appeals has expressly held that the term "person" in the FLSA's retaliation provision includes labor unions and their officers and members. *See Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37 (3rd Cir. 1943); *see also Rivera v. Installation Club System*, 623 F. Supp. 269 (D.C.P.R. 1985) (government agency could be liable); *Donovan v. Schoolhouse Four, Inc.*, 573 F. Supp. 185 (W.D. Va. 1983) (plant manager and consultant actively engaged in plant operations).

81.     Plaintiff Evans has also been "employed" by Teamsters Local 700 as its Chief Union Steward and required to report to Ramon Williams and Anthony McGee at all times.

82.     The FLSA provides for civil and criminal penalties for retaliation under 29 U.S.C. § 216, including that:

> **(a) FINES AND IMPRISONMENT**
> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection."

83.     Section 216(b) also provides for civil liability for employers who violate the FLSA, including that:

> "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

84.     "Employer" is defined to include "*any person acting directly or indirectly in the interest of an employer* in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. 203(d) (emphasis added).

18

85.     During the COVID-19 crisis in Cook County, Illinois, Plaintiffs never anticipated that Teamsters Local 700's President Williams and Vice President McGee would engage in retaliatory actions against Plaintiff Evans, and the others, for having filed the above-captioned suit in a way directly benefitting the Sheriff and Cook County, Illinois.

86.     Indeed, the above-captioned suit was filed on April 21, 2020 seeking compensation under the Fair Labor Standards Act ("FLSA") for certain preparatory and concluding work activities related to COVID-19 exposure during Plaintiffs' tours of duty at the Cook County Department of Corrections. *See Dkt. 1*.

87.     On April 27, 2020, former Plaintiff Brendan Kelly notified undersigned counsel that he was dropping out of the lawsuit suddenly and without explanation, but believed to be because of fear of retaliation from the union.[2]

88.     On April 30, 2020, President Ramon D. Williams, Teamsters Local 700, sent a letter to David Evans III. A copy of this letter is attached as Exhibit A.

89.     In his letter, Williams falsely accused Evans of keeping the Union in the dark about COVID-19 related concerns. In fact, in his letter Williams contradicts himself and states that the Union is in daily discussions with CCDOC about the types of issues in this Complaint, to wit:

> As you are aware, the collective bargaining agreement contains multiple provisions that relate to the issues raised in the complaint including Overtime Policy and Procedures. Overtime Compensation, Temporary Reassignments, Safety and Working Conditions, as well as an entire article on Grievance Procedure. In addition to these provisions, and as you also are aware, *the Union has been negotiating with CCDOC over COVID-19 issues since late March.* These negotiations have resulted in the Letter of Agreement regarding extra compensation for unit employees assigned to isolation, quarantine tiers or emergency housing related to COVID-19. *The Union is in daily discussions with the CCDOC over the types of issues raised in the complaint*. As such, the claims implicate these and other provisions of the collective bargaining agreement.

---

[2] Former Plaintiff Kelly is not included in this Complaint per his directive.

90.     The letter demanded six categories of information demanded Evans produce, even though any reading of the instant Complaint demonstrates that the issues complained of herein are plain and obvious matters that any one of the Plaintiffs, or officers all over the compound, could explain to Ramon Williams are occurring.

91.     The letter is also completely false in that it implies that Evans has been in daily discussions with the CCDOC over the types of issues raised in the complaint, when, in fact, Williams and McGee have intentionally *excluded* Evans from any such discussions, have not included him on emails pertaining to same, have not even told him about any such meetings, and have kept any such meetings that are occurring secret from Evans and the membership.

92.     On April 30, 2020, undersigned counsel received a letter from an attorney apparently representing Teamsters Local 700 President Ramon Williams and Vice President Anthony McGee (it is unclear if this letter is written on behalf of Teamsters Local 700 as an entity, or just the President and Vice President) demanding similar information pertaining to the instant lawsuit. A true and accurate copy of this letter is attached as Exhibit B.

**Union Defendants' Pattern of Adverse and Outrageous Conduct Towards Evans**

93.     Undersigned counsel responded with a letter attached as Exhibit C, and also containing a great number of reports of harassment and discrimination that had been occurring against Evans since he was elected CCDOC Chief Union Steward by the CCDOC membership in January 2020. Among the examples of discrimination and harassment outlined in the Response to Voyles' letter were some of the following incidents:

i.     When David Evans III – an African-American -- took elected office in January 2020, he was not allowed to pick any of his own staff or union stewards to assist with his duties and responsibilities, instead being required to use six (6) "Assistant Chief Union Stewards" that

were hand-picked by Williams and/or McGee, including: Gino Torres (Hispanic), Edward Kern (white), Bill Hoguiesson (white), Mike Tellez (Hispanic), and Mike Davis (white); indeed, Evans was not even allowed to give input, recommendations, or consulted as to who the Assistant Chief Union Stewards were. The prior Chief Union Steward, Mark Robinson (White), had been allowed to pick his own Assistants for years.

ii.   When David Evans III took office, Vice President and Business Agent for CCDOC Anthony McGee refused to allow Evans to participate in any meetings with the Sheriff's First Assistant Executive Director Michael Miller, the principal employer representative with whom the Sheriff and the Union conduct CBA-related issues and negotiations.

iii.  When David Evans III attempted to discuss understaffing at the armory presenting a health and safety issue with officers assigned there, Michael Miller forcibly kicked David Evans out of his office and then off of the compound entirely, and the Union refused to file anything to represent Evans at the Illinois Labor Relations Board or via a grievance. Evans was only returned to the compound after undersigned Attorney Casper emailed Sheriff's Legal regarding the issue.

iv.   After Evans' returned to the compound, Vice President McGee told him "you're back, aren't you?" when Evans asked what the Union was going to do about Miller kicking him off of the compound.

v.    When David Evans III was giving a Facebook live video update to CCDOC members regarding issues, Local 700 Recording Secretary and Assistant Chief Union Steward for CCDOC Ed Kern, and Assistant Chief Union Stewards Hoguiesson and Davis, sent a text chain to each other, inadvertently copying Evans, that Evans was having a Facebook Live session that they were notified about by "plants," that is, people spying on Evans.

vi.  The very day after the "plants" text message chain was sent, Evans gave another Facebook Live talk to the CCDOC members, and Kern – again – sent a text message stating "Just watching, he's such a bitch," and attaching an embedded copy of the video.

vii.  On or about March 17, 2020, the Union moved office locations on the CCDOC compound, and David Evans was not given a key to the office for several days, essentially being locked out of the office and from his desk. He notified Vice President Anthony McGee, who told him that he (McGee) would not be giving up his key and the Facilities Management people were out due to COVID-19. As McGee stated this, a Facilities Management person standing in the office overheard it and denied that they were out due to COVID-19 and that they could have another key made for Evans.

viii.  At the time the office location was moved, the new location had a bathroom inside it that had a problem with the locking mechanism that could result in persons being locked inside. When Evans was discussing this with McGee, McGee told him in a booming voice, "I hope the right motherfucker gets locked inside." McGee was referring to Evans without any doubt.

ix.  Around March 30, 2020, one of the Assistant Chief Union Stewards posted a photograph that he took of Evans seated at his desk in the Union Office on his phone, and stated that it implied Evans was being lazy – in fact, Evans was taking a short break like every employee on earth does, and had no knowledge he was being secretly having pictures snapped of him behind his back.

x.  On April 2, 2020, undersigned counsel emailed Ramon Williams to discuss the harassment of Evans, and advising Williams that his Recording Secretary was calling Evans "bitch" in

a derogatory manner. Williams took no action to remove Kern from any of his positions, nor, on information or belief, disciplined Kern in any way.

xi.  On April 2, 2020, after the "bitch" text message was sent, Recording Secretary Ed Kern went to the then-Communications Director Mindy Saban and asked her if the text chain could be deleted. Mindy Saban could not delete the chain, but was that same day ordered by phone by Anthony McGee to stop using the text chain to communicate with the CCDOC staff.

xii.  The very next day, April 3, 2020, Williams, McGee and all of the CCDOC Assistant Chief Union Steward were called into an in-person meeting at the Union's central office in Park Ridge, Illinois.

xiii.  David Evans III was not present and not invited at the April 3, 2020 meeting.

xiv.  Saban was called into the conference room during the meeting and observed that the participants had been in the room meeting already, and she did not see David Evans in the meeting. Saban was asked to communicate information in a newsletter to the CCDOC members regarding vacation and shift picks, and then left the meeting.

xv.  Saban was subsequently reduced from a five-day per week essential staff person required to report to Local 700's Office, to a three-day per week staff person.

xvi.  On April 24, 2020, Saban was fired as Communications Director by Williams for no stated reason, but Kern and McGee remained employed.

xvii.  In or around April 27, Williams and McGee handpicked two additional people to serve in the Union Office – John Visvardis (White) and Tyrone Felix (Black) – again, without consulting, talking to, or even giving advance knowledge of same to Evans.

xviii.   Visvardis is an extremely popular officer at the CCDOC and was selected precisely for the purpose of drowning out Evans' voice among the membership and diluting any remaining influence he had in the Union Office.

xix.   Visvardis immediately upon taking office became confrontational and adversarial toward Evans, believed to be at the direction of McGee and Williams as part of the arrangement for him being appointed to take a position in the Union Office – in other words, McGee and Williams handpicked Visvardis to take an additional Assistant Chief Union Steward position in the Union Office to drown Evans' out through numbers and popularity.

xx.   At the time of Visvardis and Felix taking their appointed positions, it was now 8 Assistant Chief Union Stewards surrounding elected Chief Union Steward Evans – all orchestrated by McGee and Williams.

94.   Evans was the only CCDOC steward elected by the CCDOC membership to that position; all the other Assistant Chief Stewards were handpicked by McGee and Williams.

95.   Evans has at all times been severely limited by Williams and McGee in the performance of his job duties and functions as Chief Union Steward.

**Plaintiffs sue Williams and McGee for Retaliation on May 7, 2020**

96.   On May 7, 2020, Plaintiffs filed a First Amended Complaint in this case, naming Ramon Williams and Anthony McGee in their individual capacities in Count IV for FLSA retaliation, and adding Dwight Anderson as a Plaintiff. (Dkt. 8).

97.   Evans posted the First Amended Complaint on Facebook showing that Williams and McGee had been named, which Plaintiffs aver, means Williams and McGee were on notice of the First Amended Complaint despite not yet being served.

**Williams causes Evans to be fired on May 11, 2020 in front of the Whole Union Office**

98.     On May 11, 2020, four days after the First Amended Complaint was filed, Defendant Williams suddenly removed Evans as a Union Steward without explanation. A photograph of this letter is attached as Exhibit D.

99.     Too, Williams ordered his Chief Legal Counsel, Nicole Lynn Chaney, to hand deliver the letter to Evans at the CCDOC Union Office on Monday morning, May 11, 2020, which she did in front of nearly all of the Assistant Chief Stewards, and several other CCDOC Officers who were present and in the room, and smirking at Evans while it happened.

100.     Evans asked Chaney for an explanation, and she stated extremely nervously that he had to put any questions to her in writing.

101.     Chaney is an Illinois-licensed attorney.

102.     Officers at the CCDOC who had elected Evans as their Chief Union Steward exploded with anger at Williams removing their chosen Chief Union Steward.

103.     On May 12, 2020, Williams sent a letter to all union members informing them of his decision to remove Evans III as Union Steward, and falsely claiming that the only reason for his removal was his failure to keep the Union apprised of work related issues, including those issues outlined in the original Complaint in this matter, having to do with preparatory and concluding activity pay. A copy of this letter is attached as Exhibit E.

104.     Defendant McGee participated in and agreed to the acts of retaliation against Evans III described herein.

Williams' and McGee's Actions are Retaliatory under 29 U.S.C. § 215(a)(3)

105.     The actions by Williams and McGee are acts of retaliation against all Plaintiffs for having filed this suit.

106.    Despite Williams' protestations that he is not taking issue with Evans III's right to participate in this lawsuit, Williams' actions are retaliatory and punitive precisely for Evans and the other Plaintiffs for having done so.

107.    Williams' and McGee's actions, too, have potentially hurt the lawsuit by creating discoverable evidence for the Sheriff to use against it, and hurting all of the Plaintiffs' and putative collective participants' claims.

108.    Williams' and McGee's actions in favor of the Sheriff and Cook County constitute actions by persons "directly or indirectly in the interest of the employer in relation to an employee" within the meaning of 29 U.S.C. § 203(d), and render Williams and McGee each an "employer" within the meaning of the FLSA's definition.

109.    So too, Williams' and McGee' actions were not taken "in the capacity of officers or agents of Teamsters Local 700," because, as noted above, their course of retaliation, discrimination, exclusion, and bad faith toward Evans indicates that they are completely acting outside of the scope of their duties under the International Constitution governing the Teamsters and the Teamsters Local 700 Bylaws.

110.    Contrary to what is stated in the above letter, it is absolutely untrue that the material sought in the Complaint has been negotiated by Teamsters Local 700 at least because (1) the union contract is silent on the issue; (2) FOIA responses did not uncover any agreements or negotiations for such matters; (3) none of the Plaintiffs are being paid for preparatory or concluding activities and no announcements have apparently been made by the Union relating to pay for preparatory or concluding activities; (4) David Evans III, in fact, has no knowledge whatsoever of any negotiations over this issue despite that he holds the position of Chief Union Steward (although he

is not suing in that capacity); and, (5) COVID-19 issues are all new issues that have only arisen just this year and there is no practice or custom with respect to such pay.[3]

111.    Nonetheless, it is apparent that Williams and McGee want to stifle any action by the Plaintiffs in order to permit Dart to continue his unfair practices against the Plaintiffs and others, either directly or indirectly, by harming Plaintiff's suit, creating evidence against it, and removing Evans from his position as Chief Union Steward for having filed it. Williams and McGee have done nothing concrete to prevent the abuses for which this lawsuit is brought.

112.    The Voyles' and Williams' letters will likely be used by the Defendants in this case against the suit.[4] While the Plaintiffs will continue to argue that collective bargaining and past practices do not cover this particular issue and stand on their position in that respect as a good faith position based on law and fact, the point presently is, McGee and Williams have now created evidence and taken a position directly in conflict with the Plaintiffs in this case and are retaliating in so doing.

113.    The Voyles' letter also lodges ethical violation allegations against the undersigned, Cass Casper, which the undersigned already vetted and found it to be perfectly proper for the undersigned to bring this lawsuit. The ethics allegation are an effort to obtain an advantage over Plaintiffs by frightening and intimidating them and one of their attorneys.

114.    After receiving this missive from Ms. Voyles, the undersigned also retained an independent attorney from Johnson & Bell who confirmed, too, that there is no conceivable issue

---

[3] There was an agreement struck for ½ hour of compensatory time for officers assigned to isolation and quarantine tiers; however, that agreement has nothing whatsoever to do with the allegations raised in this Complaint. *See* https://teamsterslocal700.com/2020/04/17/union-and-sheriffs-office-agree-to-extra-compensatory-time-for-ccdoc-members-working-with-covid-19-positive-detainees/ (accessed May 6, 2020).
[4] These letters would have to be disclosed to the CCSO by Plaintiffs in Rule 26 disclosures.

with the undersigned handling this lawsuit as it is completely unrelated to any prior representation the undersigned engaged in with Teamsters Local 700.

115.    The Voyles and Williams' letters, too, place Williams and McGee in a gross conflict of interest as to their own members as the letters are subject to disclosure requirements under Federal Rule of Civil Procedure Rule 26, and will, no doubt (although incorrectly in the Plaintiffs' views), be utilized by the other Defendants to attempt to hurt the claims raised here.

116.    Plaintiff Evans filed a Complaint with representatives from the Public Services Division of the International regarding these issues, but has not received a response to date.

117.    These actions, too, are without the scope of Williams' and McGee's duties and responsibilities as Officers of a Local Union under Article XIX of the International Constitution, including by violating at least the following subparts of Section 7:

a.    (b)(5) "conduct which is disruptive of, interferes with, or induces others to disrupt or interfere with, the performance of any union's legal or contractual obligations. ***;"

b.    (b)(10) "retaliating or threatening to retaliate against any member for exercising rights under this Constitution or applicable law including the right to speak, vote, seek election to office. . .or participate in the affairs of the Union;" and,

c.    Bringing reproach upon fellow members, *to wit*, Plaintiffs by Defendants' acts and conduct alleged herein.

118.    These actions, too, are without the scope of Williams' and McGee's duties and responsibilities as Officers of Local 700, including at least the following provisions:

a.    Section 30, "I will conduct myself at all times in a manner as not to bring reproach upon my Union;"

b.    Section 30, "I will never knowingly harm a fellow member;"

c.    Section 30, "I will never discriminate against a fellow worker on account of race, color, religion, sex, age, physical or mental

disability, or national origin, sexual orientation, gender identity, or any other legally protected group," here, being that Williams and McGee have engaged in retaliation against a group of members who have asserted their rights to file a lawsuit for better wages;

d. Section 30, "I will refrain from any conduct that would interfere with the Union's performance of its legal or contractual obligations;"

e. Section 20(F), "No *** action by the Local Union or its officers shall be administered in such a way as to deprive individual members of their rights under applicable law and the following membership rights: *** (5) the right to institute an action in any court or in a proceeding before any administrative agency, irrespective of whether the Local Union or its officers are defendants in the action. . .subject to the exhaustion of intraunion remedies as required by the International Constitution and applicable law."

119. Williams' and McGee's conduct alleged herein constitutes retaliation against David Evans III, and, by extension, the other Plaintiffs, all of whom are terrified of union retaliation for having participated in and brought this lawsuit in order to simply vindicate their right to fair pay for fair work under the FLSA.

120. Because Williams' and McGee's conduct is prohibited by the International Brotherhood of Teamsters Constitution and Local 700's Bylaws, they have been, at all times,

acting outside of the scope of their duties as President and Vice President of Local 700 or as agents of Local 700, are within the definition of an "employer" for purposes of the FLSA's retaliation provision because their actions will directly or indirectly benefit the Sheriff in this litigation, and this suit is brought against them in their individual capacities.

121.    At no time did Williams or McGee simply ask if they could assist in any way in the suit which Plaintiffs no doubt would have graciously accepted, instead hiring a lawyer, sending threatening letters, and then removing Evans.

122.    Based on the foregoing, Defendants Ramon D. Williams and Anthony McGee have, by their acts outside of the scope of their capacities as Union officers and agents, engaged in retaliation, intimidation, and coercion against Plaintiffs for having filed these claims against their Employer, the Sheriff of Cook County, Illinois and Cook County, Illinois.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Ramon D. Williams and Anthony McGee, and award Plaintiffs all legal and equitable relief to which they may be entitled pursuant to 29 U.S.C. § 216(b), including amounts for damages and emotional distress, reasonable costs and attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT 5: VIOLATIONS OF THE LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT, 29 U.S.C. § 411(a)
### (Plaintiff Evans III v. Defendants Ramon D. Williams and Anthony McGee)

123. Plaintiff Evans restates, realleges, and incorporates by reference all other allegations in this Second Amended Complaint as if fully restated herein.

124. The Labor Management Reporting and Disclosure Act ("LMRDA") provides a Bill of Rights for Members of Labor Organizations at 29 U.S.C. § 411(a), including that:

a. "FREEDOM OF SPEECH AND ASSEMBLY. – Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions \*\*\*;"

b. "PROTECTION OF THE RIGHT TO SUE. –No labor organization shall limit the right of any member thereof to institute an action in any court \*\*\*."

125. Elected officials, such as Plaintiff Evans III as elected Chief Union Steward, are protected by § 102 of the LMRDA because when an elective official is removed from his post the union's members are denied their chosen representative, chilling the speech of both the elected official and the members who supported him. *See Glover v. Ossey*, 1995 WL 374029, \*5 (N.D. Ill. 1995) (citing *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 355 (1989)).

126. Section 102 allows "[a]ny person whose rights secured by the provisions of title" to bring a civil action in a district court for such relief as may be appropriate. *See* 29 U.S.C. § 412.

<u>Williams and McGee are Officers of a Labor Organization</u>
<u>Engaged In An Industry Affecting Commerce</u>

127. Teamsters Local 700 has, at all times relevant, been a "labor organization" engaged in an industry affecting commerce and existing for the purpose of dealing with employers concerning grievances, labor disputes, wages, and other terms and conditions of employment.

128. While a public sector local, Teamsters Local 700 still falls within the coverage of LMRDA because it has at all times been a labor organization engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 402(j) at least because:

a. it is a local labor organization recognized and acting as the representative of employees of employers in an industry affecting commerce, including, as a matter of public knowledge, Cook County Sheriff's Correctional Officers who, *inter alia*, are required to utilize, carry, maintain, and purchase guns and ammunition, vests, and uniforms not exclusively purchased

within the State of Illinois, and who utilize Crown Victoria vehicles not manufactured in the State of Illinois;[5]

b. as a matter of public knowledge, has on-staff Officers and Employees, including Defendants Williams and McGee, who work for Teamsters Local 700, pay dues to Teamsters Local 700, and are purely private sector employees not employed by any public entity;[6]

c. as a matter of public knowledge, it is subordinate to a body, Teamsters Joint Council 25, having private sector members, therefore, subjecting Teamsters Local 700 to the provisions of the LMRDA.[7]

129. At all times relevant, Defendant Williams has been President of Teamsters Local 700.

130. At all times relevant, Defendant McGee has been Vice President of Teamsters Local 700.

Exhaustion Of Internal Remedies Is Futile

131. The factual allegations stated herein demonstrate that Williams and McGee, and, by extension, the Local Union, are so hostile to Evans III that he has no hope of receiving a fair hearing before Local 700's Executive Board, which Williams and McGee oversee.

132. This is because the Local Union Executive Board consists of Officers already with a demonstrated hostility to Evans, including, Williams, McGee, and Edward Kern, and the Local 700 Bylaws require Evans to file charges and seek a hearing before Teamsters Local 700's Executive Board on Charges of misconduct.

133. In addition, Plaintiff Evans states that exhaustion of internal remedies is futile because he already contacted, through counsel, the Public Services Division of the International

---

[5] *See U.S. v. Morales-Rodriguez*, 467 F.3d 1, 10 (1st Cir. 2006).
[6] *Id.*, FN 5; *see also Laity v. Beatty*, 766 F.Supp. 92, 97-98 (W.D. N.Y. 1991).
[7] *See Alabama Educ. Ass'n v. Chao*, 455 F.3d 386, 394-95 (D.C. Cir. 2006).

Brotherhood of Teamsters with complaints about his adverse treatment on multiple occasions, and has never even received a response.

134. The aforementioned hostility is stated with the allegations in Count 4 herein, including, but not limited to, Kern calling Evans a "bitch," McGee stating that he hopes the "right motherfucker gets locked" in the Union bathroom (referring to Evans), and Williams unilaterally removing Evans as Chief Union Steward for filing this lawsuit.

<u>Williams and McGee Have Deprived Evans of LMRDA Rights to Freedom of Speech and Assembly and Protection of the Right to Sue</u>

135. Williams and McGee have deprived member Evans of his right to institute an action in Court and to freely associate and engage in speech by their actions in this case by removing him from his Chief Union Steward position for having instituted this action.

136. At no time did Evans' instituting this action with other fellow officers and unit members at all interfere with any union matter, negotiation, grievance, arbitration, policy, or any other term of Evans' standing as Chief Union Steward.

137. No work rule or policy prohibited Evans from instituting the instant lawsuit with other fellow officers and, indeed, he believed in good faith that filing this action would assist and help fellow officers in achieving better wages during the COVID-19 pandemic.

WHEREFORE, for the foregoing reasons, Plaintiff Evans respectfully requests that this Court enter judgment in his favor, and against Ramon D. Williams and Anthony McGee, and award Plaintiff all legal and equitable relief to which he may be entitled pursuant to LMRDA Section 102, including for damages and emotional distress, reasonable costs and attorneys' fees, and such other relief as this Court deems just and proper.

## CONCLUSION

Based on the foregoing, Plaintiffs pray that this Honorable Court grant the relief sought in all Counts in this Complaint, certify a collective action for FLSA purposes for whom named Plaintiffs will serve as collective action representatives, certify a class for IWPCA purposes for which Plaintiff Muhammad will serve as class action representative, enter judgment against Defendants Williams and McGee for having engaged in acts of retaliation, violations of LMRDA with respect to Plaintiff Evans, and award individual, collective, and class-wide relief as sought herein.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL COUNTS**

Respectfully submitted,

*/s/ Cass T. Casper*
*/s/ Richard Linden*
By:_____
*Plaintiffs' Attorneys*

*Richard Linden, Esq.*
17 North State Street, #1550
Chicago, Illinois 60602
P: (312) 590-0211
E: lindenlaw@gmail.com

*Peter Bustamante, Esq.*
17 North State Street, #1550
Chicago, Illinois 60602
P: (312) 346-2072
E: pvbust@bustamantelaw.com

*Cass T. Casper, Esq.*
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 351-2478
E: ctc@talonlaw.com

*Gianna R. Scatchell, Esq.*
LAW OFFICES OF GIANNA SCATCHELL

360 W. Hubbard Street, 1404
Chicago, Illinois 60654
P: (312) 248-3303
E: gia@lawfirm.gs

*John Lanahan, Esq.*
188 West Randolph Street
Chicago, Illinois 60601
P: (312) 404-2416
E: lanahan.john@gmail.com