IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **DAVID EVANS III**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) Case No. 20 cv 2453 |
| v. | ) |
| | ) The Honorable Rebecca R. Pallmeyer |
| **THOMAS J. DART**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CONDITIONAL
COLLECTIVE ACTION CERTIFICATION PURSUANT TO
THE FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. § 216(b)**

For their reply in further support of their motion for conditional collective action certification, Plaintiffs[1] state as follows:

**I.    The Sheriff issued a common set of directives to all potential class members requiring them to follow state and local guidelines and to clean and disinfect high use items at work and at home.**

In their motion for conditional certification, Plaintiffs demonstrated—though competent declarations—that they and all other potential claimants share the same job duties and were directed to engage in the sanitation activities for which they were not compensated. Plaintiffs also cited caselaw finding, under similar circumstances, that conditional certification is appropriate. Defendants ignore this evidence and fail to mention, much less distinguish, the caselaw cited by Plaintiffs. Defendants also do not dispute, nor can they, that all potential claimants share the same job duties and responsibilities. Instead, Defendants' primary argument in opposition to conditional certification is that Plaintiffs cannot point to "any directive to engage in extensive 'sanitization' activities off duty after they arrived in their homes or before they were

---

[1] So the Court is aware, Plaintiff Officer Joseph Tinoco sadly passed away from COVID-19 on or about January 15, 2022. Counsel is working with the family to address the situation as decisions are made and appropriate motions will be filed in due course.

to return for the next shift." Opp. Brief at 12. But this assertion is belied by the very documents submitted by Defendants, which make clear that officers must follow government guidelines generally and, specifically, to clean and disinfect frequently used items, including at home.

For example, an official CCDOC memorandum dated March 19, 2020 and issued to "[a]ll CCDOC Staff" instructed officers to "practice everyday preventive actions to reduce the spread of contagious diseases, including … disinfecting frequently used items or surfaces as much as possible." BURKE GROUP EXH. 1 at Page 005 (Doc. 90-3 at PageID #1312). Frequently used items necessarily include an officer's duty belt, PPE, and other equipment. CCDOC Policy 1605 similarly instructs correctional officers to "[c]lean and disinfect … frequently touched workplaces surfaces before and after use and areas within a member's home." CCDOC Policy 1605 at Section 1605.3(g) (Doc. 85-3 at PageID #1013). This same directive makes clear that officers are responsible for the "proper use and upkeep" of their PPE, which, again, necessarily includes proper cleaning and disinfecting in compliance with local and state guidelines. *Id.* at Section 1605.7.2 (Doc. 85-3 at Page ID# 1016). These were not mere suggestions, but official directives from the Sheriffs' Office. *See* Walsh Declaration at ¶ 4 (referring to these documents as "the section of the CCDOC June 2020 policy manual relating to directives on timekeeping procedures applicable to Correctional Officers").

Indeed, throughout this time period, officers were routinely instructed to comply with state and local guidelines and to clean and disinfect high use items both at work and at home. *See, e.g.,* CURRY GROUP EXH 1 at PAGE 001 (Doc. 90-1 at PageID #1125) ("Clean and disinfect frequently touched objects and surfaces using a regular household cleaning spray or wipe."); *id.* at PAGE 018 ("PRACTICE GOOD HYGEINE: *** Disinfect frequently used items and surfaces as much as possible."); *id.* at PAGE 041 (Doc. 90-1 at PageID #1165) ("To help

2

prevent the spread of COVID-19, it is critical to clean and disinfect frequently touched surfaces and objects. Keep yourself, your family and your coworkers healthy by wiping down surfaces at both work and at home."); *id.* at PAGE 130 ("Clean AND disinfect frequently touched surfaces daily.").

The CDC, in conjunction with the National Institute for Occupational Safety and Health, made clear that correctional officers should "[c]lean and disinfect the duty belt and gear (before re-use) using a disinfectant spray or wipe, according to the product label." *See* NIOSH *Workplace Solutions: Safe and proper use of disinfectants to reduce viral surface contamination in correctional facilities*, U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health, DHHS (NIOSH) Publication No. 2021–121 at 3, attached as Ex. A. "[B]efore re-use" necessarily means either after or before the officer's next shift.

Defendants themselves acknowledged that "the CCSO distributed CDC and Illinois pandemic guidance in daily emails and memoranda," which included guidance to "[c]lean and disinfect frequently touched surfaces in homes and personal vehicles." Opp. Brief at 12. Defendants nonetheless insist that these and other guidance they distributed to officers were "not directives, orders or policies," but "general CDC guidance available to the public at large." *Id.* But the Sheriff adopted these guidelines as their official policy:

> **1605.2 POLICY**
> Members of the Sheriff's Office shall adhere to local and state guidelines, and applicable policies and procedures, regarding best practices to help protect against the spread of COVID-19. The Sheriff's Office shall send out communications on a regular basis (e.g., email, SheriffNet, LMS) to address best safety practices for members while in the workplace. In addition, physical signage will be posted throughout Sheriff's Office facilities and workspaces to reinforce best safety practices.

3

CCDOC Policy 1605 at Section 1605.2 (Doc. 85-3 at Page ID# 1012). In fact, officers were *subject to disciplinary action* for failure to comply with the very guidelines Defendants attempt to disavow here. *Id.* ("Members who fail to adhere to this policy, state and local guidelines, Sheriff's Office policies/ procedures related to COVID-19 and other COVID-19-related mandates may be subject to discipline."). Specific references to the CDC policies were included in links under Brad Curry's signature line in many of the emails included in Defendants' response. *See, e.g.,* CURRY GROUP EXHIBIT 1 at pp. 41, 55, 156. Indeed, the Sheriff distributed an entire flyer from the CDC titled "10 ways to manage respiratory symptoms at home" that references cleaning all surfaces. CURRY GROUP EXHIBIT 1 at p.156. The NIOSH policy attached as Exhibit A, too, specifically provides for cleaning "duty belt and gear."

Further, Plaintiffs' declarations are sufficient to meet the "modest factual showing" required for conditional certification, without reference specific written policies. *See, e.g.*, *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 851 (N.D. Ill. 2017) ("[S]everal courts in this District have conditionally certified a collective action where multiple employees provided affidavits declaring that they consistently worked overtime without being compensated, even if the plaintiffs did not identify a specific, written policy requiring unpaid overtime work."). In any event, Defendants themselves provided the applicable policies, in particular Section 1605.2, referenced above.

In sum, the common theme of these directives is to "clean and disinfect" all "frequently used items" at "work and at home." Officers that fail to do so "may be subject to discipline." To the extent any of these directions derived from government guidelines "available to the public at large," the Sheriff explicitly adopted those guidelines as official policy. More importantly for purposes of conditional certification, these directives were uniform and distributed to all

4

potential claimants. So even Defendants' main argument that these instructions did not carry the weight of official policy is an issue that is common to all claimants that can and should be decided in a single collective proceeding. Conditional certification, therefore, is appropriate.

II.     **Defendants' remaining arguments have no merit.**

Defendants conclude their brief with a number of perfunctory arguments in opposition to conditional certification, none of which have merit. First, Defendant asserts that "[n]umerous courts have struck down requests for conditional certification in off-the-clock cases because, by their very nature, claims of working off-the-clock require courts to conduct individualized, fact-intensive analyses." Opp. Brief at 14. The cases cited by Defendants, however, do not stand for this blanket proposition. In fact, they only demonstrate why conditional certification is appropriate here.

In *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000), certification was denied not because it was an "off-the-clock" claim, but rather because the claim turned on whether each class member was an employee or independent contractor. *Id.* at *2 ("In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship with [the defendant]…."). Unlike here, the plaintiff in *Pfaahler* made "no showing that other potential claimants performed the same type of duties as himself." *Id.* If anything, *Pfaahler* supports conditional certification in this case because all potential claimants had the same job duties and there is no dispute that they were all employees and not independent contractors. *Id.* ("A collective action under the FLSA is … appropriate where those in the pool of potential claimants perform the same duties as the plaintiff.").

At issue in *Forney v. TTX Co.*, No. CIV.A. 05 C 6257, 2006 WL 1030194 (N.D. Ill. Apr. 17, 2006) was whether plaintiff's position was improperly classified as exempt from the overtime wage provision of FLSA. *Id.* at *2. But the various job positions in the proposed class had different duties and educational requirements, each of which would have to be analyzed on an individual basis to determine whether the position was exempt. *Id. Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009 (N.D. Ind. 2005) was also an improper classification case, which hinged upon the job duties of each individual position. *Id.* at 1013-14 (noting that courts decline "to find potential class members similarly situated where liability depended on an individual determination of each employee's duties"). No such problem is presented here. Indeed, Defendants make no argument that the potential claimants in this case have different job duties.

In *Saxton v. Title Max of Alabama, Inc.*, 431 F. Supp. 2d 1185 (N.D. Ala. 2006), the plaintiffs offered no "testimony that they personally worked in excess of 40 hours as assistant managers for [the employer]." *Id.* at 1188. Nor did the plaintiffs "point to any 'single decision, policy, or plan' that allegedly resulted in the proposed opt-in class not receiving overtime wages in contravention of FLSA." *Id.* Here, on the other hand, Plaintiffs submitted declarations attesting to the fact they each worked uncompensated hours, which, as shown above, was at the behest of directives from their employer.[2]

Second, relying on *Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017), Defendants assert that conditional certification should be denied because "an individualized inquiry would

---

[2] Defendants also cite to *Howard v. Cook County Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021). Plaintiffs already addressed this decision in its opening brief. *See* Doc. 66 at 10. Needless to say, the individualized nature of the sexual harassment claims at issue in *Howard* is a far cry from the uniform job duties of the potential claimants here and the uniform set of directives they received to clean and disinfect high use items at work and at home. Furthermore, the plaintiffs in *Howard* sought certification under Rule 23 and "the FLSA's 'similarly-situated requirement has been interpreted as 'considerably less stringent' than that applied to class actions certified under Rule 23.'" *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 755 (N.D. Ill. 2011) (quoting *Perez v. Radioshack Corp.*, 552 F. Supp. 2d 731, 744 (N.D. Ill. 2005)).

need to be made as to whether Defendants should be liable if those employees actually worked overtime and failed to follow the proper procedure for being compensated for time worked." Opp. Brief at 15. But this issue only goes to the Sheriff's knowledge. Based on the directives outlined above, the Sheriff either knew or should have known that officers were cleaning and disinfecting frequently used items both at work and at home. The Court need not decide that issue at this stage, but it is common to all potential claimants and can and should be decided in a single collective proceeding. Indeed, even in *Allen*, the FLSA claim was conditionally certified, decertification and summary judgment were denied, and a bench trial was held on, among other issues, the employer's knowledge. *Id.* at 940. The same should be found here. *Id.*; *see also Meadows v. NCR Corp.*, No. 16 CV 6221, 2017 WL 5192009, at *9 (N.D. Ill. Nov. 9, 2017) ("Given [plaintiff's] testimony that [the employer's] written policies prohibiting off-the-clock work were being violated in practice, that territory managers wanted CEs to work off-the-clock, and that each of [plaintiff's] managers have instructed him to work off-the-clock … there is a genuine issue of material fact as to [the employer's] knowledge.") (citing *Allen*, 865 F.3d 939); *Nehmelman*, 822 F. Supp. 2d at 753 ("[T]he existence of such a policy does not conclusively establish that the [employer] pays employees in compliance with the FLSA."); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008) ("But the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime.").

Lastly, without citation to any supporting authority, Defendants claim that "whether the time was de minimis and, therefore, not compensable" is an individual issue that defeats conditional certification. Opp. Brief at 15-16. This argument fails for several reasons. "[T]he *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few

7

seconds or minutes are in dispute." *Blakes v. Illinois Bell Tel. Co.*, 77 F. Supp. 3d 776, 786 (N.D. Ill. 2015). "[C]ourts have found that 'as little as ten minutes of working time goes beyond the level of *de minimis*[.]'" *Id.* at 786-87 (citing *Gonzalez v. Farmington Foods, Inc.*, 296 F.Supp.2d 912, 928 n. 27 (N.D.Ill.2003)). Here, Plaintiffs presented evidence that the additional cleaning and sanitizing activities exceeded 10 minutes per day. Furthermore, in applying the doctrine, courts not only consider the amount of time spent on the extra work, but also "the practical administrative difficulties of recording the additional time, the regularity with which the additional work was performed, and the aggregate amount of compensable time." *Id.* These are issues that can be resolved on a collective basis. Indeed, Defendants cite no authority for the proposition that the *de minimis* doctrine poses any barrier to conditional certification, nor can they. *See Nehmelman*, 822 F. Supp. 2d at 761 (noting that at the conditional certifications stage, "[t]he Court need not resolve these arguments regarding the viability or applicability of the *de minimis* doctrine").[3]

      Defendants also accuse Plaintiffs of misrepresenting the state of conditions at the CCDOC and the Sheriff's response to the pandemic, including extensive measures the Sheriff took to minimize COVID exposure among staff and inmates. *See* Opp. Brief at 3-6. But Plaintiffs in this case are not decrying measures taken by the Sheriff, nor claiming deficiencies in the measures. Plaintiffs are alleging that they worked off-the-clock performing decontamination work that directly benefitted the Sheriff and that the Sheriff required. Defendants' lengthy treatment of the Sheriff's efforts to combat and minimize the pandemic in their response brief is

---

[3] Defendants also claim that their "affirmative defenses would also require individualized, fact-intensive analyses," such as the issue of "not following proper timekeeping procedures along with Defendants' knowledge (or lack thereof) of the at-home off duty activities." Opp. Brief at 16. As noted above, however, the issue of whether the Sheriff knew or should have known that officers were engaging in at home cleaning and sanitation efforts is an issue common to all claimants.

8

wholly irrelevant to the issue of Plaintiffs and similarly-situated officers receiving pay for the work claimed in the complaint in this case.

In conclusion, none of the arguments advanced by Defendants defeat conditional certification here.

**III.     The position of Investigators II should be included in the proposed class.**

Plaintiffs presented sufficient evidence that they perform the same job and are subjected to the same orders, rules, and policies as Correctional Officers. *See* Servant and Tinoco Declarations at ¶ 3. They perform work in Division 5 on a daily basis, as well as out of an additional facility on Rockwell street, and are subject to the exact same rules as Plaintiffs. Defendants' present no evidence whatsoever showing that they are subject to different rules. Plaintiffs have presented enough evidence to satisfy for a modest factual showing for conditional certification of a class that includes the position of Investigator II.

**IV.     Replies to Defendants' notice objections.**

Plaintiffs would agree to the fourth, fifth, sixth, seventh proposed changes to the Notice that are suggested by the Defendants. Plaintiffs would also agree to strike the word "decontaminating" and rephrasing the notice to state "washing or sanitizing" in that section, which responds to the third objection.

Plaintiffs would agree to move the class start date to March 9, 2020, which is the date pled in the FLSA and IWPCA counts of the Second Amended Complaint and the proposed notice should align with that date. *See* Doc. 16 at ¶¶ 62-71. That is also the date of Governor Pritzker's disaster declaration, which officers were required to comply with as a matter of General Order. *See* Doc. 16 at ¶ 27. Order 1605 requires them to comply with the disaster

9

declaration, so that date should be the start date of the class. *See* CCDOC Policy 1605 at Section 1605.2 (Doc. 85-3 at Page ID# 1012).

For the reasons stated above, Plaintiffs do not agree that Investigator II's should be removed from the Notice. Plaintiffs do not agree with Defendants' final objection, which would require that the opt-in form should be rewritten to require an "attestation," as an attestation should not be necessary at the conditional certification stage and Defendants' cite no case stating that same is required. Attestations, if necessary, could come at the full certification stage, summary judgment, and/or trial.

## V. Conclusion.

Plaintiffs are sympathetic to the unique challenges that COVID-19 poses to the CCDOC. They live through those challenges every day. Those challenges, however, do not allow the Sheriff to skirt the FLSA laws. Plaintiffs, and others just like them, went to work every day during the pandemic, putting themselves and their loved ones at risk. They were directed to and did engage in decontamination activities for the benefit of their employer and to prevent the spread of COVID-19 at the CCDOC. Under the FLSA, they should be paid for those activities. Because Plaintiffs and other officers are similarly situated in this regard, conditional certification should be granted.

Electronically filed: January 21, 2022

Respectfully submitted,

By: */s/ Jacie Zolna*
*/s/ Cass T. Casper*
*/s/ Gia Scatchell*
*/s/ Richard Linden*
*/s/ Peter Bustamante*

_____
Plaintiffs' Attorneys

10

Jacie C. Zolna, Esq.
Myron M. Cherry & Associates, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
P: (312) 372-2100
F: (312) 853-0279
E: jzolna@cherry-law.com

Cass T. Casper, Esq.
DISPARTI LAW GROUP, P.A. (#57548)
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 351-2478
E: ccasper@dispartilaw.com

Gia Scatchell, Esq.
DISPARTI LAW GROUP, P.A. (#57548)
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
E: gia@dispartilaw.com

Richard Linden, Esq.
17 North State Street, Suite 1550
Chicago, Illinois 60602
P: (312) 590-0211
E: lindenlaw@gmail.com

Peter V. Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602
P: (312) 590-0211
E: pvbust@bustamantelaw.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 21, 2022, he caused to be served the foregoing document on all counsel of record via this Court's CM/ECF filing system, and that all such counsels are registered e-filers.

*/s/ Jacie Zolna*
_____